IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JEANIE WORSLEY, on behalf of herself ) <br> and all others similarly situated, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE STAPLES GROUP, INC., et al., ) <br> ) <br> Defendants. ) <br> ) | Case No. 17-2254-CM |

## MEMORANDUM AND ORDER

Plaintiff Jeanie Worsley brings this putative collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, claiming that her former employer—defendant Staples Contract & Commercial, Inc. ("Staples C&C")—misclassified Account Service Managers as exempt under the FLSA. Defendant Staples C&C is a subsidiary of defendant The Staples Group, Inc. Plaintiff seeks overtime wages for hours she worked in excess of forty per week because she claims that she was not, in fact, exempt from the FLSA's overtime provisions. Plaintiff also brings claims for breach of contract and quantum meruit. This matter is before the court on defendants' motion for summary judgment (Doc. 31). For the following reasons, the court denies the motion in part and grants it in part.

**I.    Legal Standards**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom

in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## II.     Factual Background

At a very high, generalized level, plaintiff's job was this:  She was an Account Service Manager ("ASM") for defendant Staples C&C.  In that capacity, she worked with defendants' eStores, which are web-based client stores that sell items with company logos on them.  A client's employees and sales force could purchase items like t-shirts and coffee mugs with the client's logos on them from the eStores.  Plaintiff worked on creation of the eStores, working with the Pricing Department, Marketing Department, sales representatives, and others to get the eStore set up.

The facts in this case are not so much about a particular factual occurrence or series of occurrences, but more about the factual details of plaintiff's everyday job duties.  Plaintiff testified at her deposition about the nature of her job duties.  In defendants' motion for summary judgment, they cite at length passages from plaintiff's deposition—arguing that her deposition testimony shows that the nature of plaintiff's job falls under the administrative exemption to the FLSA requirements.  More specifically, defendants argue that plaintiff's deposition testimony shows that she performed office work directly related to the management or general business operations of the employer or customers, and that plaintiff exercised discretion and independent judgment with respect to matters of significance for her employer.

A later-filed affidavit, however paints a different picture.  In an affidavit submitted with her response memorandum to defendants' motion, plaintiff explains in detail how she lacked authority, discretion, and the freedom to exercise independent judgment.  At times, these explanations seem to directly contradict her earlier deposition testimony.  (*Compare* Doc. 32-1 at 94:19–23 (agreeing with a statement in her performance review that plaintiff "holds all parties (internal and external) accountable

for their part in the process") *with* Doc. 42-2 at ¶ 9 ("I had no power to hold anyone, internal or external, accountable for their parts in the process."). But the majority of the time, the explanations in the affidavit give specific detail about plaintiff's job that was glossed over in the deposition with general, broad terms—often terms pulled directly from plaintiff's resume. (*Compare* Doc. 32-1 at 37:16–39:14 (confirming that plaintiff's resume said she "over[saw] all aspects of creation of the eStore," including "product selection based on trends and vertical market research presented by the Marketing Department") *with* Doc. 42-2 at ¶ 7 ("I had no role in selecting or suggesting products to carry in the client eStores. I never advised customers as to the advantages or disadvantages of products, nor did I ever advise customers about marketing the products in their eStores.").

Defendants argue that plaintiff's affidavit is a sham affidavit that directly contradicts her deposition testimony. *See Macias v. Sw. Cheese Co., LLC*, 624 F. App'x 628, 632 (10th Cir. 2015); *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986); *Gardenhire v. Manville*, No. 15-4914-DDC, 2017 WL 445506, at *2 (D. Kan. Feb. 2, 2017). But the court need not automatically disregard an affidavit that contradicts deposition testimony. Rather, the court considers several factors in evaluating whether to disregard an affidavit: "whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain." *Franks*, 796 F.2d at 1237.

Here, plaintiff was cross-examined during her deposition. Nothing in the affidavit is the result of newly-discovered evidence. And the earlier testimony does not appear to reflect confusion. Rather, it reflects generic, broad words and descriptions. It is not readily apparent to the court that the affidavit as a whole is inconsistent with plaintiff's deposition testimony. To be certain, the affidavit casts plaintiff's job in a different light. But in most instances, the affidavit appears to expand on deposition

testimony or clarify it. In other words, it presents differences more like the variations in shades of gray than the contrast between black and white. Some parts may, in fact, be inconsistent. But those parts are not material to the court's decision here, and the court does not believe that disregarding the affidavit as a whole is justified. *See Macias*, 624 F. App'x at 632 (affirming district court's decision to strike portions of an affidavit).

For purposes of this decision, the court focuses only on the facts that suggest what plaintiff's primary duty was, and whether plaintiff exercised discretion and independent judgment with respect to matters of significance in that duty. Some of these facts, viewed in the light most favorable to plaintiff, are as follows:

- Plaintiff performed her job duties within guidelines set by her supervisor and management. She followed established instructions and procedures for all assignments.

- Plaintiff's decisions were limited to basic aspects of her employment.

- Plaintiff had no role in contract negotiations and lacked power to bind her employer to agreements.

- Plaintiff operated as a contact for customers and routed customer questions to the appropriate departments.

- Plaintiff lacked the power to discipline others for failing to meet deadlines.

- The ASM job description requires ASMs to "[w]ork[] closely with the Director of Account Services, "[s]upport[] the Director of Account Services in building and maintaining client relationships . . ." and "[w]ork[] with the Director of Account Services in providing direction and project management leadership . . . ."

The above facts about plaintiff's job are indicative of an absence of discretion and independent judgment. They suggest a lack of individual responsibility. But the record contains other references to

plaintiff's position that suggest the opposite. For example, Exhibit H describes an ASM, in part, as follows:

- "Manages assigned account base with some directional help from manager";
- "Owns the timeline and launch";
- "[O]wns the process and projects for assigned accounts"; and
- "Responsible for staying on top of all aspects of the job related to their account assignments."

In addition, there is more evidence in the record about the nature of plaintiff's job:

- Plaintiff's decisions were never vetoed, although the Director of Account Services had veto power;
- Plaintiff testified at her deposition that she would describe the role of an ASM as a project manager.
- Plaintiff indicated on her resume that she oversaw all aspects of the creation of the eStore.

These facts suggest much more responsibility, discretion, and judgment. The facts and characteristics identified above represent only a small part of the record, but they accurately represent the wide range of fact-intensive evidence about the nature of plaintiff's job duties.

### III. Analysis

#### A. FLSA Claim

Under the FLSA, employees must be paid minimum wage plus overtime for hours worked in excess of forty hours per week. 29 U.S.C. §§ 206(a); 207(a). But certain employees are exempt from these requirements. Here, defendants claim that plaintiff was exempt because she was employed in an administrative capacity. 29 U.S.C. § 213(a). An employee is exempt under the administrative exemption if: (1) she receives compensation on a salary basis at a rate of not less than $455 per week;

(2) her "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and" (3) her "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a).

The parties agree that plaintiff meets the first element. But they disagree as to whether she meets elements two and three. For purposes of summary judgment, the court need only address the third element. Because the court determines that a genuine issue of material fact exists as to what plaintiff's primary duty is—and therefore whether it includes the exercise of discretion and independent judgment with respect to matters of significance—the court cannot grant summary judgment in favor of defendants on plaintiff's FLSA claim.

### 1. Plaintiff's Primary Duty

To qualify for the administrative exemption, the "employee's 'primary duty' must be the performance of exempt work." 29 C.F.R. § 541.700(a). The term "primary duty" means the "principal, main, major or most important duty that the employee performs." *Id.* "Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." *Id.* Although time spent on particular duties is not the only test, generally an employee's "primary duty" will be the duty that occupies the major part of the employee's time. *Barth v. Wolf Creek Nuclear Operating Corp.*, 125 F. Supp. 2d 437, 440 (D. Kan. 2000). The court considers several factors, including "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the

employee." 29 C.F.R. § 541.700(a).  A dispute as to the primary job duties is one of fact—not one of law.  *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 825 (10th Cir. 2012).

Defendants claim that plaintiff's primary duty was that of a project manager, overseeing all aspects of the creation of web-based client stores.  Plaintiff disputes this characterization.  She acknowledges that her resume describes, in part, her job as "oversee[ing] all aspects of the creation of web-based client stores."  She also acknowledges that she agreed in her deposition that she would describe "the role of an ASM as a project manager."  But plaintiff argues that "overseeing all aspects" and "project manager" are both vague and ambiguous terms.

As a matter of law, the court cannot determine exactly what plaintiff's primary duty was.  She testified that she, as an ASM, was a project manager.  But what that means is controverted.  There is varying evidence on what plaintiff did in this capacity and how much weight her actions carried.  From plaintiff's perspective, she was basically a "relay point"—carrying messages back and forth between the customers and the decision-makers.  And there is also testimony that plaintiff oversaw the creation of web-based client stores.  But again, precisely what that oversight entailed and how much authority and independence it involved is controverted.  Defendants also do not address how much time plaintiff spent on various tasks (specifically, tasks that qualify as exempt work), although Doc. 41-3 does identify approximate percentages of time ASMs are expected to spend on groups of duties and responsibilities.  The identification of plaintiff's primary duty is an issue of fact for the jury.  Without being able to define plaintiff's primary duty, the court cannot grant summary judgment in favor of defendants.

 2. *The Exercise of Discretion and Independent Judgment*

Even if the court were to accept defendants' definition of plaintiff's primary duty, there remains another problem with ruling as a matter of law that the administrative exception applies.

Defendants have not shown a lack of genuine issue of material fact as to whether plaintiff had discretion and independent judgment in that primary duty.

"In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). "The term 'matters of significance' refers to the level of importance or consequence of the work performed." *Id*.

The Department of Labor has identified a number of factors in its regulations to be considered when analyzing an employee's discretion and independent judgment:

> whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has the authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b). More factors courts have considered include the following:

> the employee's freedom from direct supervision; personnel responsibilities, troubleshooting or problem-solving activities on behalf of management, use of personalized communication techniques, authority to handle atypical or unusual situations, authority to set budgets, responsibility for assessing customer needs; primary contact to public or customers on behalf of the employer, the duty to anticipate competitive products or services and distinguish them from competitor's products or services, advertising or promotion work, and coordination of departments, requirements, or other activities for or on behalf of employer or employer's clients or customers.

2004 Final Rule, 69 FR at 22144.

As indicated in the factual background of this Memorandum and Order, the evidence before the court can weigh both ways in applying the factors above.  Moreover, the evidence is controverted on many factors.  Some of the aspects of plaintiff's job indicate that she had very little discretion and was not expected to use independent judgment.  For example, plaintiff performed her job duties within established guidelines.  Her decision-making was limited to basic aspects of her employment.  She had no role in contract negotiations and lacked power to bind the company to agreements.  And she operated as a contact for customers and routed their questions elsewhere.  Other aspects demonstrate more discretion.  Plaintiff's decisions were never vetoed, even though the Director of Account Services had veto power.  And she worked closely with the Director to "manage and coordinate the implementation and ongoing operation across all internal support departments of in-stock eStore programs."  There is ample evidence in the record supporting factors weighing both ways on this issue. The trier of fact will need to determine plaintiff's level of discretion and independent judgment in her primary job duty.  The court denies summary judgment on this claim.

### B.  Breach of Express or Implied Contract Claim

Plaintiff alleges that she had a contract (express or implied) with defendants that they would pay her for "all work performed for [d]efendants pursuant to applicable law."  But plaintiff also admits she was never told that she would be paid pursuant to applicable law.  She claims that there was a federal wage and hour poster in defendants' Overland Park location, but she does not allege that she saw the poster or relied on it.  And complying with a federal requirement to post a notice does not create a contract.  *See Salazar v. City of Albuquerque*, No. 10-0645, 2013 WL 5554186, at *46 (D. N.M. Aug. 20, 2013).  In any event, generally, state law claims that merely seek to enforce the defined remedies of the FLSA are preempted.  *See Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1399 (10th Cir. 1997) (holding Kansas common law claims precluded by statutory remedy contained in FLSA);

*see also Anderson v. Sara Lee Corp.*, 508 F.3d 181, 193 (4th Cir. 2007) (holding that the FLSA preempts state law claims that "depend on establishing that [the defendant] violated the FLSA"). Plaintiff has not pleaded any facts that would take her claim out of the general rule that it is preempted and duplicative. The court grants summary judgment on this claim.

### C. Quantum Meruit/Unjust Enrichment Claim

The same analysis applies to plaintiff's claim for quantum meruit/unjust enrichment. Plaintiff is not seeking any remedy that would be unavailable under the FLSA. The court therefore grants summary judgment on this claim, as well.

### D. Claims Against The Staples Group, Inc.

Plaintiff has identified both defendant The Staples Group, Inc., and defendant Staples C&C as her employers. But she does acknowledge that defendant The Staples Group, Inc. was not her "direct employer." Her pay records reflect that she was paid by defendant Staples C&C. Defendants claim that The Staples Group, Inc. was not plaintiff's employer and should be granted summary judgment in this case. Plaintiff responds that discovery is not complete and that she has not conducted discovery on this particular issue. The parties have only conducted Phase One of discovery, which addressed whether conditional and/or class certification is appropriate. Plaintiff argues that additional discovery may establish that The Staples Group, Inc. was her employer under the FLSA definition, which includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

The court concludes that it lacks enough evidence to determine, as a matter of law, that The Staples Group, Inc. was not plaintiff's statutory employer. After further discovery, the evidence may reveal that The Staples Group, Inc. should be dismissed. But that discovery has not yet been completed. The court denies this portion of defendants' summary judgment motion.

**IT IS THEREFORE ORDERED** that defendants' motion for summary judgment (Doc. 31) is denied in part and granted in part.  The court grants summary judgment on plaintiff's claims for breach of contract and quantum meruit.  But plaintiff's FLSA claim may proceed against both defendants.

Dated this 26th day of September, 2018, at Kansas City, Kansas.

/s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**